UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE CIVIL INVESTIGATIVE
DEMANDS 20-270 AND 20-271 ISSUED
BY THE UNITED STATES
DEPARTMENT OF JUSTICE

No. <u>8:24-cv-2420</u>

## PETITION TO SET ASIDE CIVIL INVESTIGATIVE DEMAND

BMP USA, Inc. ("BMP"), and Cool Master USA, LLC ("Cool Master") (collectively "Petitioners") by and through their undersigned attorneys, respectfully petition this Court, pursuant to 31 U.S.C. § 3733, to set aside the Civil Investigative Demands ("CIDs") issued by the United States Department of Justice as identified herein, and for relief as the Court deems just and proper.

IN SUPPORT THEREOF, Petitioners state as follows:

### I.    INTRODUCTION

This action arises under the False Claims Act ("FCA"), 31 U.S.C. § 3733(j)(2), to set aside the CIDs issued by the government to BMP and Cool Master. *See* Declaration of Robert M. Romashko ("Romashko Dec."), Ex. 1 (Demand No. 20-270), Ex. 2 (Demand No. 20-271), Ex. 3 (supplemental demand received September 6, 2024).

The FCA provides that a person may petition a district court to set aside a CID where the CID fails to comply with the provisions of section 3733 or upon the assertion of any constitutional or legal right.  § 3733(j)(2)(B).  Here, the CIDs were issued in furtherance of an unconstitutionally filed *qui tam* suit, and should, therefore, be set aside.  In addition, because the government's investigative activities are premised on acts void under the Constitution, Petitioners request other relief detailed herein.

## II.  BACKGROUND

### a.  BMP and Cool Master

Petitioners are Florida entities with their headquarters and principal places of business located in Tampa, Florida.  Romashko Dec., ¶¶ 2-3.

Both companies were at one time involved in the refrigerant business.  BMP was involved in the importation and blending of refrigerant gasses until 2018, but the company no longer blends or sells refrigerants.  Romashko Dec., ¶ 2.  Cool Master was also involved in the importation of refrigerant gasses and other HVAC equipment parts but has ceased commercial operations.  Romashko Dec., ¶ 3.

BMP and Cool Master are related companies, in that they are both owned by iGAS Holdings, Inc., another Florida corporation with its headquarters and principal place of business located in Tampa, Florida.  Romashko Dec., ¶ 4.

### b.  The Government's Investigation and CIDs Issued in Earlier Years

Four years ago, on October 19, 2020, the government issued its original information request, in the form of the CIDs.  *See* Romashko Dec., Ex. 1 and Ex. 2. The CIDs included both document requests and written interrogatories to Petitioners.  On December 28, 2020, Petitioners responded to both sets of requests, which included written responses as well as a voluminous document production.

Between December 2020 and August 2023, Petitioners heard nothing from the government regarding their discovery responses.  Then, on August 2, 2023, over two-and-a-half years after issuing the CIDs, the government issued three supplemental requests regarding Petitioners' discovery responses.  Romashko Dec., Ex. 4.  The government also confirmed that its investigation related to imports of R-134a, which is a specific refrigerant gas.  Petitioners began producing the requested supplemental information in September 2023.

In September 2023, the government began issuing demands for persons affiliated with Petitioners to provide oral testimony, and it conducted oral examinations of two individuals on November 8, 2023.  On April 30, 2024, over three-and-a-half years after issuing the CIDs, the government conducted oral examination of a third individual.

### c.  Settlement Negotiations Reveal that the CIDS Arise from a *Qui Tam* Case

Between July and August 2024, the government and counsel for Petitioners discussed a settlement of the suit underlying the government's investigation into imports of R-134a.  At the time, the government advised that it intended to issue certain specific document requests if a settlement could not be reached.  The parties were unable to reach a settlement, and those talks ended.

However, importantly, in discussing a settlement, the government confirmed that the CIDs—and, by extension, the resulting investigation—were made in furtherance of a *qui tam* complaint.  Romashko Dec. ¶ 5.  During the months of settlement discussion, that *qui tam* complaint remained filed under seal, and the relator remained a party to the suit.

### d.  The Government Issues New Requests in Summer 2024

On August 30, 2024, when counsel for Petitioners informed the government that Petitioners believed a settlement was not possible at that point in time, the government emailed and asked for BMP to collect and produce the documents identified earlier in settlement negotiations.  Romashko Dec. Ex. 5.  At the prompting of Petitioners' counsel, on September 6, 2024, the government memorialized these requests in a formal letter.  Romashko Dec. Ex. 3.  Petitioners began preparing responsive documents, but on September 30, 2024, intervening

authority arose that, as described below, demonstrated that the underlying *qui tam* action is invalid.

## III.   ARGUMENT

On September 30, 2024, a division of this Court held that the *qui tam* provisions of the FCA are unconstitutional because they violate the Appointments Clause. *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC*, No. 8:19-CV-01236-KKM-SPF, 2024 WL 4349242 (M.D. Fla., Sept. 30, 2024). Because the government's CIDs were issued in furtherance of a *qui tam* case that was filed without legal authority, the CIDs should be set aside.

### a.  This Court has Jurisdiction and this Petition is Timely Filed

The FCA, at Section 3733(j)(2), provides any person who has received a CID under Section 3733(a) with the right to file, in the district court where such person resides, a petition for an order setting aside the CID. Section 3733(j)(2)(A) provides that the petition must be filed "within 20 days after the date of service of the civil investigative demand, or at any time before the return date specified in the demand, whichever date is earlier," or at such other time agreed to by the issuer of the demand.

Petitioners are headquartered and operate in Tampa, Florida, which is within this district, so this case is brought in the proper court. Romashko Dec. ¶¶ 2-3. Petitioners appreciate that this case is brought significantly later than 20 days

from the date of service of the CIDs, whether one measures that from the original requests in 2020 or the supplemental requests of August 30 and September 6, 2024.[1] However, the deadline is not jurisdictional, and on the present facts, should not apply.

The 20-day deadline is a non-jurisdictional procedural bar. The fact that a statute specifies that action must be taken by a certain date does not, automatically, render that deadline jurisdictional. Statutes that set time limits for the transfer of adjudicatory authority from one Article III court to another are presumptively jurisdictional, whereas statutes that do not govern such a transfer are subject to a "clear statement" rule. *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 25 n.9 (2017).

The Supreme Court has set a high bar to establish that a statute of limitations is jurisdictional. *United States v. Wong*, 575 U.S. 402, 409 (2015). Accordingly, the clear statement rule provides that statutory time limits should be treated as non-jurisdictional unless "traditional tools of statutory construction… plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Id.* at 410. Most time-bars, therefore, are non-jurisdictional, and do not deprive a court

---

[1] It should not be controversial that every time the government makes a new demand, whether it is styled as under a new number or as a supplemental request, the 20-day clock necessarily resets as to the latest request. Otherwise, the government would be free to, after the initial time for a response has passed, make demands that were not statutorily authorized, with no recourse for the recipient.

of authority to hear a case. *Id.* Instead, Congress "must do something special" to "tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Id.*

There is no clear statement in section 3733(j)(2). It "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006). Indeed, the statute merely sets deadlines to file a petition, with nothing more. The clear statement rule is a "readily administrable bright line" and, although Petitioners are unaware that any court has had occasion to apply the rule in the context of a petition of this type, nothing in the statute speaks to a Congressional attempt to "do something special" to render the deadline jurisdictional. Moreover, Petitioners note that the statute sets a deadline that is contingent on the whims of the issuer of the CID, and which may be unilaterally extended by the Department of Justice, which would be an unusual feature for a jurisdictional statute. Thus, this Court has jurisdiction over this matter, irrespective of the 20-day time limit.

If the 20-day time limit is not jurisdictional, in certain circumstances it need not be applied, such as in the present case. Petitioners submit that the *qui tam* provisions of the FCA are unconstitutional, and thus, the CIDs were issued without proper statutory authority and must be set aside. Prior to September 30, 2024, when a division of this Court held those provisions unconstitutional in

*Zafirov*, no court had ever issued a similar ruling.  Petitioners bring this Petition within 20 days of the issuance of this new authority, and the Court should, therefore, not apply the 20-day deadline and consider this case on the merits.

> **b. The CIDs are Invalid Because the Government's Investigation Arises from a *Qui Tam* Case that Violates the Appointments Clause**

> 1. The Standard for Setting Aside a CID

Section 3733(j)(2)(B) provides that a petition to set aside a CID "may be based on any failure of the demand to comply with the provisions of this section or upon any constitutional or other legal right or privilege" of the recipient of the demand.  Here, as set forth in *Zafirov*, the *qui tam* provisions of the FCA are unconstitutional.  As a result, the initial *qui tam* complaint that sparked the government's investigation is void.  Moreover, the government launched its investigation to determine whether to intervene in a case that, legally, was not properly brought.  Accordingly, this Court should set aside the CID.

> 2. The *Qui Tam* Provisions of the FCA are Unconstitutional Under the Appointments Clause

The Appointments Clause requires the President, a court of law, or the head of a department to appoint "Officers of the United States."  Art. II, § 2, cl. 2.[2] When

---

[2] The Appointments Clause distinction between authority to appoint "principal" versus "inferior" officers are irrelevant here because the relator is self-appointed, which the Clause never permits.

a relator files a *qui tam* complaint in a federal district court, the government must investigate to decide whether or not to intervene in the case. 31 U.S.C. § 3730(b)(2). The relator's decision to institute litigation on behalf of the United States, direct the executive branch's investigative prerogatives, and conduct litigation in the name of the United States is an exercise of significant executive branch authority. Because the relator is self-appointed, this exercise of authority violates the Appointments Clause. *See Zafirov*, 2024 WL 4349242, at **1–2, **7–8, **19–20.[3] Here, the investigation stems from this unlawful act. Further, the investigation serves to allow the government to decide whether to intervene in the existing *qui tam* case. But that case must be dismissed, as it was brought by a party improperly asserting government authority, and it is, therefore, void. The investigation as to whether to intervene in a void *qui tam* case is without statutory authority and cannot legally proceed.

The *qui tam* provisions of the FCA are unconstitutional. As referenced above, a division of this Court recently held that they violate the Appointments Clause. *Id.* at *1. The decision in *Zafirov* is the first of its kind, but it is well-

---

[3] The court in *Zafirov* also noted that the *qui tam* provisions of the statute may violate the Take Care Clause and the Vesting Clause of Article II because, essentially, a relator exercises executive branch functions, but the President has neither removal authority over a relator nor supervisory control. 2024 WL 4349242, at *4. However, the court did not reach that question because its resolution of the Appointment Clause question disposed of the case. *Id.* at *1.

reasoned and persuasive.[4]  Though the opinion is not binding precedent on this court, "for a variety of reasons, including consistency of result, it is an entirely proper practice for district judges to give deference to persuasive opinions by their colleagues on the same court."  *TMF Tool Co. v. Muller*, 913 F.2d 1185, 1191 (7th Cir. 1990).  Petitioners urge this Court to consider the *Zafirov* opinion as a whole and to adopt its reasoning; however, Petitioners recapitulate *Zafirov*'s analysis below.

Critical to the analysis in *Zafirov* is that, to be subject to the Appointments Clause, a relator must be an "Officer of the United States."  *See, e.g.*, *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 241 (2018).  An officer of the United States is one who "exercises significant authority pursuant to the laws of the United States," *Buckley v. Valeo*, 424 U.S. 1, 126 (1976), and who occupies "a continuing position

---

[4] There is contrary precedent to *Zafirov* in other circuit courts of appeal; however, each of these cases is more than 20 years old, and all contain legal arguments opposing the constitutionality of the FCA's *qui tam* provisions, either because the court conceded the question is a close one, or due to significant disagreement among panel members.  *See United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 757–59 (9th Cir. 1993) (noting that the question appeared to be close under *Buckley*); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*,, 41 F.3d 1032, 1050 (6th Cir., 1994) (Nelson, J., concurring in part and in the judgment) (declining to concur in portion of opinion holding the *qui tam* provisions constitutional); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d at 758–75 (Smith, J., dissenting) (noting that the FCA violates the Appointments Clause); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 804–05 (10th Cir. 2002) (seemingly agreeing that the "significant authority" test was met).

More recently, in *United States ex rel. Polansky v. Exec. Health Res.*, Justices Thomas (in a dissent) and Kavanaugh and Barrett (in a concurrence) questioned the constitutionality of the *qui tam* provisions of the FCA.  599 U.S. 419, 428–39 (2023).  So none of the out-of-circuit precedent holding the *qui tam* provisions constitutional should be given significant weight, as it reflects a questionable and outdated interpretation of the law.

established by law," *United States v. Germaine*, 99 U.S. 508, 511 (1878). Petitioners address each of these tests below.

A. A *qui tam* relator exercises significant authority.

First, a *qui tam* relator exercises significant authority. It is settled law that one who may "conduct[] civil litigation in the courts of the United States" exercises significant authority on behalf of the United States. *Buckley*, 424 U.S. at 140. This "discretionary power to seek judicial relief" is significant authority that requires the officer to be subject to the Appointments Clause. *Id.* at 138. Since *Buckley*, the Supreme Court has consistently held that persons who enforce or administer federal law are officers of the United States. *See Lucia,* 585 U.S. at 241, 244–51 (SEC administrative law judges); *United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021) (administrative patent judges); *Seila L. LLC v. Consumer Fin. Prot. Bureau,* 591 U.S. 197, 219–20 (2020) (directors of the Consumer Financial Protection Bureau); and *Morrison v. Olson*, 487 U.S. 654, 671 n.12 (1988) (independent counsel with prosecutorial authority).

Like the above-listed agents, a relator enjoys unfettered discretion to file a complaint to initiate enforcement action on behalf of the United States. 31 U.S.C. §§ 3729(a)(1), 3730(b). Once a relator has undertaken this action, the government has 60 days to decide whether to intervene or allow the relator to proceed. *Id.* at § 3730(b)(2). Even where the government does intervene, the relator remains a party

to the action, and if the government does not, the relator has the discretion to prosecute the action however they choose, potentially creating negative precedent for the government. *Id*. at §§ 3730(b)(4); (c)(1). As the government itself noted in the arguments in *Zafirov* and in other cases, investigation and prosecution of crimes, and enforcement of the FCA, are core executive powers. *See Zafirov*, 2024 WL 4349242, at *19 (citing government concessions and briefing). This kind of prosecutorial power is necessarily significant authority.

B. A *qui tam* relator occupies a continuing position.

A relator under the FCA also meets the "continuing position" test. To be an officer of the United States, one must "occupy a continuing position established by law." *Germaine*, 99 U.S. at 511; *see also Lucia,* 585 U.S. at 245. This inquiry turns on whether the statutory duties of the appointee are "occasional and temporary" rather than "recurring and permanent." *Germaine*, 99 U.S. at 511–12. In *Morrison v. Olson*, the Supreme Court held that an independent counsel authorized to conduct a single investigation was an inferior officer of the United States, subject to the Appointments Clause. 487 U.S. at 660–63, 670–73. A relator's responsibility – the prosecution of a single case from complaint through judgment and appeal – is consistent with the authority of an independent counsel. Under *Morrison*, a person who has indefinite litigation authority in a given matter is, necessarily, an officer of the United States.

The Appointments Clause clearly requires an officer of the United States to be "appointed" by an official authorized to make such an appointment. Art. II, § 2, cl. 2. Congress can authorize certain officials to appoint inferior officers of the United States, but the FCA does not contain such an authorization – rather, it allows relators to self-appoint by filing a complaint. 31 U.S.C. § 3730(b)(1).

Accordingly, the *qui tam* provisions of the FCA are unconstitutional. In *Zafirov*, the court held that the remedy in that circumstance (where the government had not intervened in the case) was dismissal because the appropriate remedy for an *ultra vires* action by a government actor is to set aside that *ultra vires* action, and the dismissal of the relator in that case left no litigant remaining on one side of the dispute. 2024 WL 4349242, at *19 (citing *Collins v. Yellen*, 594 U.S. 220, 258 (2021)).

    **c.  The Invalidity of the *Qui Tam* Provisions Extends to Intervened Cases and to Investigations Instituted as a Result of an Unconstitutional *Qui Tam* Filing**

The *Zafirov* court did not address the situation where the government may intervene, nor did it address the effect of an invalid *qui tam* complaint on the government's investigatory authority. But the same authority that the *Zafirov* court relied upon points to the inevitable conclusion that the government may not save a *qui tam* case filed in violation of the Appointments Clause by intervening, and as a result, it also may not continue an investigation as to whether to intervene in such a case.

A. The Government Cannot "Save" a *Qui Tam* Case Under the FCA by Electing to Intervene

Given that the *qui tam* provisions of the FCA are unconstitutional, the government may not "save" an FCA case filed by a relator by electing to intervene. This is for two reasons.

First, the government's intervention does not remove the relator from the case – the relator remains a party to the case and has a substantive right to participate (on an unrestricted basis, absent court order) and to share in any recovery. 31 USC §§ 3733(c)(1)–(2). Intervention does not, in other words, remove the improperly appointed official from the case.

Second, there is an even more fundamental problem. The actions of government officials who step beyond their constitutional authority are void. *See Collins*, 594 U.S. at 258 (collecting cases voiding actions of government actors where they exercised powers they did not lawfully possess). The court in *Zafirov* summarized the issue as follows:

> When a litigant's challenge "involve[s] a Government actor's exercise of power that the actor did not lawfully possess," such as when an official is improperly appointed, the remedy is to set aside ultra vires actions. Collins, 594 U.S. at 258 (collecting cases); see also id. at 283 (Gorsuch, J., concurring in part) ("[O]fficials cannot wield executive power except as Article II provides. Attempts to do so are void."). Put differently, in Appointments Clause cases, "invalidation" is "the remedy," which "follows directly from the government actor's lack of authority to take the challenged action in the first place." CFPB v. All Am. Check Cashing, Inc., 33 F.4th 218, 241 (5th Cir. 2022) (en banc) (Jones, J., concurring); Collins, 594 U.S. at 266 (Thomas, J., concurring) ("[A]n officer must be properly

appointed before he can legally act as an officer."). Here, these remedial principals require dismissal.

*Zafirov*, 2024 WL 4349242, at *19.

The cited cases demonstrate that the underlying complaint in a *qui tam* case is void at the moment it is filed. If the government could fix the defect by choosing to intervene and step into the shoes of the relator, the defendant would be denied substantive rights; for example, the statute of limitations would relate back to the filing of the void complaint, resulting in the defendant being legally harmed by the filing of the unauthorized complaint. A *qui tam* complaint by a relator is not just *ultra vires*; it is a nullity, and it must be set aside.

B. The Government's Investigation into Whether to Elect to Intervene Cannot Continue Because Intervention in an Unconstitutionally Filed Case is Not Possible

Petitioners now turn to the government's authority to proceed with its investigation. Put simply, it cannot do so.

As the *Zafirov* court noted, the fact that the relator's complaint "forces the Executive Branch to align its investigative priorities with those of the self-interested third party" creates a problematic exercise of government power. 2024 WL 4349242, at *7. The relator essentially imposed an illegal requirement on the Department of Justice that it begin an investigation into Petitioners. Remedying this illegal act requires ending the investigation. Moreover, as the *Zafirov* court noted, where there was an *ex officio* act of a relator, it was necessary to "[r]eturn[]

15

things to the way they were before… [relator] first acted ultra vires…" *Id.* at *19. The court also noted that the first *ex officio* act in a *qui tam* is the filing of the complaint. *Id*. Returning things to the way they were before that act means setting aside the CIDs, ordering the government to cease its investigation, and ordering it to destroy or return all materials received during the illegal investigation.

Second, the government instituted its investigation for the purpose of deciding whether to intervene in the *qui tam* case. But as demonstrated above, intervention is not legally possible because that case is constitutionally void and must be dismissed. Because the case is void, there is no legal basis for the government's investigation. Moreover, there is no reason for the government to investigate further as to whether to intervene, where intervention would be a legal impossibility.[5]

Accordingly, the government's investigation was for an improper purpose – to decide whether to intervene in an unconstitutionally-filed case. The CIDs should, therefore, be set aside, and the Court should grant appropriate relief to set

---

[5] 31 U.S.C. § 3733(a) provides that the Attorney General "may, before commencing a civil proceeding under section 3730(a)… or making an election under 3730(b), issue in writing" a CID. Although the government could have initiated its own investigation independent of a *qui tam*, that is not the case here. Moreover, the principle at issue here is the same as the one that justifies the "fruit of the poisonous tree" doctrine in criminal prosecutions: "knowledge gained by the Government's own wrong cannot be used by it." *Silverthorne Lumber Co., Inc. v. United States*, 251 U.S. 385, 392 (1920). If a relator could cause the government to investigate via an illegal exercise of government authority, and then the government was free to use the fruits of such an investigation, any remedy a defendant would have where they were harmed by the filing of an *ultra vires qui tam* complaint would, at best, be illusory.

the parties back in the position they would have been absent the *ultra vires* filing of the underlying FCA complaint.

WHEREFORE, Petitioners pray that the Court:

1. Set aside the CIDs identified as numbers 20-270 and 20-271, as well as any supplemental or follow-on requests thereto;

2. Order the United States Department of Justice to terminate its investigation; and

3. Order the United States Department of Justice to, within 14 days of its Order, return or destroy all materials obtained as a result of its investigation.

Submitted by:

HUSCH BLACKWELL, LLP

By: _/s/ Buffey Klein_____
Buffey Klein
Robert M. Romashko (*pro hac vice* pending)
Nithya Nagarajan (*pro hac vice* pending)
Jamie Shookman (*pro hac vice* pending)
1900 N. Pearl Street, Suite 1800
Dallas, TX  75201
Tel:  214-999-6100
Fax: 214-999-6170
buffey.klein@huschblackwell.com
robert.romashko@huschblackwell.com
nithya.nagarajan@huschblackwell.com
jamie.shookman@huschblackwell.com

*Attorneys for BMP USA, Inc. and*
*Cool Master USA, LLC*